## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ALDRICH BOARDING CARE HOME
L.L.C. d/b/a BRIDGES MN
1932 University Ave W
Saint Paul, MN 55104                                   **CASE NO.  19-2900**

PEILIN ZHOU                                            **COMPLAINT**
1932 University Ave W
Saint Paul, MN 55104

        Plaintiffs,

v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES
Office of Chief Counsel
20 Massachusetts Avenue, NW
Washington DC 20529

KENNETH T. CUCCINELLI
Acting Director, U.S. Citizenship and
Immigration Services, in his Official
Capacity
20 Massachusetts Avenue, NW
Washington DC 20529

        Defendants.

## SUMMARY AND NATURE OF ACTION

1.     Plaintiffs Aldrich Boarding Care Home L.L.C. d/b/a Bridges MN ("Bridges MN")

and Peilin Zhou ("Ms. Zhou") bring this action to challenge the arbitrary, capricious, and

unreasonable decision of the U.S. Citizenship and Immigration Services ("USCIS") to deny

Bridges MN's H-1B petition. Plaintiffs also seek an order that would allow Bridges MN to

continue to employ Ms. Zhou in the highly specialized position of Human Resources Analyst at

Bridges MN's multiple facilities in Saint Paul, Minnesota. Because of USCIS's unreasonable

542850.1

denial decision, Ms. Zhou has been forced to stop working and will be forced to leave the country on November 5, 2019.

2.      USCIS's decision to deny Bridges MN's H-1B petition has all the hallmarks of an arbitrary and capricious agency decision. First, USCIS simply refused to consider evidence that would contradict its denial. For example, USCIS summarily dismissed an expert opinion, demonstrating *specifically* that the "industry standard" for Human Resources Analysts is to hold a bachelor's degree or higher in a specific specialty, as well as the expert's credentials establishing him as an expert in the field. Instead of engaging with the expert's analysis, USCIS responded to the opinion by observing that the agency is not required to accept the employer's statement without evidence.  That may be true, but the expert opinion actually is evidence, and USCIS's refusal to address the substance of the opinion is an abuse of discretion.

3.      Second, USCIS ignored substantial documentation demonstrating the nature of Bridges MN's business operations, and particularly the evidence demonstrating that Bridges MN requires its Human Resources Analyst to hold at least a Bachelor's degree in Human Resources, Human Resources and Industrial Relations, business, or a related field. Bridges MN provided detailed descriptions of its operations and the job duties of Human Resources Analyst, including a chart demonstrating the direct relationship between Ms. Zhou's coursework and the duties she performs at Bridges MN, a line-and-block organizational chart and company staff profiles showing the educational levels of Ms. Zhou's colleagues, and samples of Ms. Zhou's work product. USCIS entirely ignored this evidence.

4.      USCIS concluded that the Human Resources Analyst position does not "normally" require a bachelor's degree or higher in a specific specialty, but defined the term "normally" in a manner that was unreasonable, and which has been rejected by courts. USCIS did not accept the

explanation from the Department of Labor's Occupational Outlook Handbook (OOH) and O*Net, which provides that the position "typically" requires a bachelor's degree in a specific specialty and that "most" positions require a bachelor's degree in a specific specialty. It seems axiomatic that terms like "typically" and "most" should be understood to mean "normally." Yet USCIS concluded the opposite. Not surprisingly, this exact type of interpretation by USCIS has been rejected by courts. *See Next Generation Tech., Inc. v. Johnson*, No.15-cv-5663, 2017 WL 4685275 (S.D.N.Y. Sep. 29, 2017).

5.      Finally, in ignoring and mischaracterizing evidence and purporting to require evidence irrelevant to whether Bridges MN established that the position of Human Resources Analyst is a specialty occupation, USCIS imposed an arbitrarily high burden of proof on Plaintiffs not in accordance with the law. The relevant legal standard for evaluating an H-1B petition is by a preponderance of the evidence. USCIS "must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). Even if USCIS has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence demonstrating that the claim is "more likely than not" true, the petitioner has satisfied the standard of proof.

6.      As these examples illustrate, USCIS's decision (a) imposed an impermissibly narrow interpretation of Department of Labor data not in accordance with the law, (b) purported to require evidence that was irrelevant to the question of whether Bridges MN proved by a preponderance of the evidence that Ms. Zhou's position is a specialty occupation, (c) entirely ignored evidence provided by Bridges MN that contradicts the basis for USCIS's denial, and (d) misapplied the relevant legal standards.

7.      To the extent USCIS's denial decision is entitled to deference, the decision is arbitrary and capricious and should be overturned. As described above, the decision ignores relevant evidence, purports to require obviously irrelevant evidence, and changes the evidentiary and legal standards in order to reach a seemingly pre-determined denial.

8.      The timing of USCIS's decision creates significant hardship for Bridges MN and for Ms. Zhou. If this Court does not act to reverse USCIS's decision, Ms. Zhou will be forced to leave the United States on November 5, 2019, the end of the 60-day grace period from the day her F-1 status expired on September 6, 2019, when USCIS issued its decision This also will create significant hardship to Bridges MN, which will lose a necessary employee along with all the benefits created by having Ms. Zhou's knowledge and experience at its Minnesota operations. Ms. Zhou's inability to work since USCIS issued its denial has already caused hardship for Ms. Zhou and Bridges MN.

9.      With this lawsuit, Plaintiffs request an order remanding the denial decision to USCIS for approval of the H-1B visa petition. Alternatively, Plaintiffs request an order remanding the decision for reconsideration and maintaining the status quo that existed before the denial of Bridges MN's petition, thus permitting Ms. Zhou to remain in the country and continue to work for Bridges MN in the capacity she was working before the petition was denied. *See, e.g.*, *Zuora Inc. v. Baran et al.*, Case No. 18-cv-01949, Doc. No. 22 Temporary Restraining Order to Show Cause (N.D. Cal. April 6, 2018).

## JURISDICTION

10.     Plaintiffs bring this civil action under 5 U.S.C. § 701 *et seq*., the Administrative Procedure Act ("APA"), 28 U.S.C. § 1331(federal subject matter jurisdiction), 8 U.S.C. § 1101 *et seq.*, the Immigration and Nationality Act ("INA"), and 28 U.S.C. § 1361.

11.     Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Agency action includes the denial of a Petition for a Nonimmigrant Worker (Form 1-129) filed pursuant to 8 U.S.C. § 1101(a)(15)(H).

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this suit "arises under" a "right of action" created by the APA. *Bowen v. Massachusetts,* 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 USC § 1331.").

## EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED

13.     The USCIS decision denying Bridges MN's H-1B petition constitutes a "final agency action" for purposes of APA review. *See* 5 U.S.C. § 704. The decision "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

14.     Plaintiffs are not required to exhaust any administrative appeal before filing this action in U.S. District Court. "[A]n appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). Neither condition applies here. The applicable regulation, 8 C.F.R. § 103.3(a)(1)(ii), provides: "Certain unfavorable decisions on applications, petitions, and other types of cases *may* be appealed." (Emphasis added). The agency's regulations therefore do not require that an appeal be completed before court action, and the agency's decision is not stayed pending administrative review.

## VENUE

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the Defendants reside in the District of Columbia.

## THE PARTIES

16.     Plaintiff Aldrich Boarding Care Home L.L.C. d/b/a Bridges MN is a Minnesota company, headquartered in Saint Paul, Minnesota.

17.     Plaintiff Peilin Zhou resides in Minnesota and is the beneficiary of Bridges MN's H-1B petition.

18.     Defendant USCIS is an "agency" within the meaning of 5 U.S.C. § 552(f). USCIS is charged with responsibility for the administration of relevant provisions of the INA.

19.     Defendant Kenneth T. Cuccinelli is Acting Director of USCIS. He is sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

20.     The H-1B nonimmigrant classification of the Immigration and Nationality Act (INA) provides for admission to the United States of temporary workers hired by U.S. employers to perform services in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b).

21.     "Specialty occupation" is defined by the statute as an occupation that requires (A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. 8 U.S.C. § 1184(i).

22.     Agency regulations further enumerate the four criteria—of which a position must meet one—to qualify as a specialty occupation pursuant to 8 U.S.C. § 1184(i): (1) a bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular

position; (2) the degree requirement is common to the industry in parallel positions among similar organizations, or the particular position is so complex or unique that it can be performed only by an individual with a degree; (3) the employer normally requires a degree or its equivalent for the position; or (4) the nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a bachelor's or higher degree. 8 C.F.R. § 214.2(h)(4)(iii)(A).

## FACTS

### A.      *Aldrich Boarding Home Care L.L.C. d/b/a Bridges MN*

23.      Plaintiff Aldrich Boarding Home Care L.L.C. d/b/a Bridges MN ("Bridges MN") was founded in 2015 and operates multiple health care facilities in Saint Paul, Minnesota. Bridges MN maintains its headquarters in Saint Paul, Minnesota. The company has 522 employees and has a gross annual income of over $20 million and a net annual income of approximately $4.2 million.

24.      Bridges MN provides high quality services and housing options to individuals with disabilities. Its mission is to improve the lives of disabled individuals by creating opportunities for more independence in their homes and jobs. It aims to ensure informed choice and person centered planning in helping to design innovative service models for individuals no matter the level of need. Bridges MN has a strong interest and track record in serving individuals transitioning from institutional or unsuccessful placements.

25.      Bridges MN operates and staffs CRS (Adult Foster Care) homes, board and care facilities, supported housing solutions via provider-owned apartments and landlord relationships, and creative housing options. This continuum of care gives individuals a broad range of housing options in regards to location, affordability, unit mix, and accessibility.

26.      Bridges MN provides licensed 245D services along with ILS, SLS, SES, 24-Hour Emergency Assistance, as well as other services. These services allow for individuals and their

teams to choose a service plan that fits the specific needs and wants in the community of their choosing on an *a la carte* basis.

### B.    Ms. Zhou's Employment with Bridges MN

27.    Ms. Zhou is a highly educated Chinese citizen. She entered the United States on an F-1 student visa in 2012, and graduated from the University of Minnesota with a Bachelor of Science in Business in 2016. She then continued her F-1 status through a Master of Arts in Human Resources and Industrial Relations at the University of Minnesota. Since her graduation in 2018, Ms. Zhou has worked as Human Resources Analyst for Bridges MN through Optional Practical Training (OPT). Her F-1 status expired on September 6, 2019, the date of USCIS's denial of Bridges MN's H-1B petition filed on her behalf. She is afforded a 60-day grace period following the denial – specifically, November 5, 2019 – by which she must depart the United States.

28.    As Bridges MN explained in its petition, the Human Resources Analyst position works with internal stakeholders to solve business problems by providing highly dynamic reporting, analysis. and insight regarding Bridge MN's business. The Human Resources Analyst also helps to identify relationships and trends to uncover insightful findings, which entails designing and maintaining reports in the Human Resources Information System (HRIS).

29.    The job duties of Human Resources Analyst include, *inter alia*: analyzing employment-related data and preparing required reports; presenting insights and findings via reports, graphs, charts, tables, and PowerPoint in executive-ready formats; conferring with management to develop and implement personnel policies and procedures; provides management with information or training related to interviewing, performance appraisals, counseling techniques, or documentation of performance issues; manages worker's compensation process and claims; manages Family Medical Leave Act (FMLA) and Leave of Absence requests; handles

unemployment claims and hearings; and manages the company's Work Opportunity Tax Credit (WOTC) process.

30.     The position of Human Resources Analyst requires in-depth knowledge and experience of Human Resources and Industrial Relations (HRIR), using data and metrics in HRIR, compensation and benefits, labor relations collective bargaining, and employer-sponsor benefits of Bridges MN's HRIS. Because of the highly specialized knowledge and skills needed to perform the Human Resources Analyst position at Bridges MN, a Bachelor's in Human Resources, Human Resources and Industrial Relations, Business, or a related field is required.

31.     In the year that Ms. Zhou has already been performing these specialized duties for Bridges MN, she has prepared and maintained employment records related to events such as hiring, termination, leaves of absence, transfers, and promotions using human resources management system software and an in-depth understanding of Bridges MN's operational and staff needs. Her knowledge and skill has proven essential for Bridges MN to continue to provide exceptional housing and specialized care for individuals with disabilities. As Human Resource Analyst, Ms. Zhou would continue to guide Bridges MN in effectively evaluating current and future workers' efficiency and skillset to further improve the services it provides to its residents.

### C.     Bridges MN Petitioned for H-1B Status

32.     Bridges MN hired Ms. Zhou in July 2018 pursuant to her employment authorization via F-1 OPT. On April 11, 2019, Bridges MN petitioned for H-1B status for Ms. Zhou to employ her in the specialized position of Human Resources Analyst at its Saint Paul, MN, offices.

33.     In its petition, Bridges MN included a detailed description of the nature of the business and the proffered position; Ms. Zhou's full F-1 status record, educational credentials and transcripts; Department of Labor Occupational Outlook Handbook (OOH); O*Net Online data

demonstrating the degree requirements for the position of Human Resources Specialists; Department of Labor regulations that specifically state that Human Resources Specialists are professional positions that typically require at least a Bachelor's degree; and sample job postings for similar positions.

34.     On June 1, 2019, USCIS issued a Request for Evidence (RFE). The RFE stated in purely conclusory terms that Bridges MN failed to show that the Human Resources Analyst position qualified as a specialty occupation and requested additional evidence. The RFE failed to engage entirely with the documentation that Bridges MN provided.

35.     Bridges MN submitted its response to the RFE on August 26, 2019 ("Response"). In its Response, Bridges MN included an expanded description of the nature of Bridges MN's business operations, the job duties performed in the position of Human Resources Analyst, and the many reasons the position qualifies as a specialty occupation. It included additional data from the Department of Labor, a line-and-block chart of Bridges MN, evidence of degrees held by other employees, an expert opinion letter, a detailed chart demonstrating the direct relationship between Ms. Zhou's coursework and the job duties of the position, evidence of the sophisticated degree programs from which Ms. Zhou graduated, information from human resources professional associations, and examples of Ms. Zhou's work product for Bridges MN.

36.     On September 6, 2019, USCIS issued its decision denying Bridges MN's H1-B petition, thus terminating Ms. Zhou's F-1 status. USCIS's denial failed to consider much of the evidence submitted by Bridges MN, and failed to meaningfully address any of the evidence that would undercut its denial.  USCIS's denial was based largely on the conclusion that Bridges MN failed to submit evidence to meet the criteria for an H-1B visa.  This evidence actually was in the record, but it was entirely ignored by USCIS.

37.     Similarly, USCIS mischaracterized the applicable legal standard by refusing to consider the substance of an expert opinion submitted by Bridges MN based on USCIS's view that it is not required to accepted unsupported statements from the employer.   In reaching this conclusion, USCIS ignored the fact that an expert opinion—with detailed analysis and clear credentials—actually constitutes evidence that USCIS must address in making its determination.

38.     As a result of this denial, Ms. Zhou was forced to stop working, causing significant harm to her personally and to Bridges MN's business operations. Because of USCIS's denial, Ms. Zhou will be forced to leave the country on November 5, 2019, after living in the United States for seven years.

## COUNT I

### Administrative Procedure Act
### 5 U.S.C. § 706(2)(A)

39.     Plaintiffs incorporate the above allegations as if set forth herein.

40.     Plaintiffs have the right to judicial review of USCIS's denial of Bridges MN's H-1B petition under 5 U.S.C. §§ 702, 704.

41.     USCIS's actions violate federal regulations, the INA and the Administrative Procedure Act. USCIS's actions in denying Bridges MN's H-1B petition constitute an agency action that is arbitrary, capricious, and an abuse of discretion. USCIS's actions therefore are not in accordance with 5 U.S.C. § 706(2)(A).

42.     USCIS's decision to deny Bridges MN's H-1B visa petition for Ms. Zhou was based upon an interpretation contrary to and inconsistent with 8 U.S.C. § 1101(a)(15)(H), 8 U.S.C. § 1184(i)(1)(A)-(B) and 8 C.F.R. § 214.2(h)(4)(iii)(A).

43.     Particularly in light of the record providing ample and uncontroverted evidence of the classification Ms. Zhou's position as a specialty occupation, USCIS's decision was "arbitrary,

capricious, an abuse of discretion, [and] otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

44.     USCIS arbitrarily interpreted OOH data in finding that "human resources, business or a related field" means that the degree is therefore not in a specific discipline:  "The variety of paths available to enter into a Human Resources Specialists position precludes the conclusion that a baccalaureate or higher degree or its equivalent in a specific specialty is normally the minimum requirement for entry into the proffered position." Courts across the country have held that such an interpretation is impermissibly narrow, contradicts the plain meaning of the OOH language, and is inconsistent with the statute and regulations. *See RELX, Inc. v. Baran*, Case No. 19-cv-1993, 2019 WL 3557699 (EGS) (D.D.C. Aug. 5, 2019); *Raj & Co. v. U.S. Citizenship and Immigration Servs.*, 85 F. Supp. 3d 1241 (W.D. Wash. 2015); *Residential Finance Corp. v. U.S. Citizenship and Immigration Servs.*, 839 F. Supp. 2d 985 (S.D. Ohio 2012); *Button Depot, Inc. v. U.S. Dep't of Homeland Sec.*, 386 F. Supp. 2d 1140 (C.D. Cal. 2005); *Tapis Int'l v. I.N.S.*, 94 F. Supp. 2d 172 (D. Mass 2000).

45.     Not only did USCIS misinterpret the OOH, but it ignored substantial evidence that contradicted its pre-determined decision, claiming the record demonstrated that "[t]here is no apparent standard for how one prepares for a career as a Human Resources Analyst and no requirement for a degree in a specific specialty." This conclusory statement is blatantly and irresponsibly untrue, and ignores substantial evidence in the record, including an expert opinion letter, job postings, industry articles, and degree programs. Courts have consistently reprimanded USCIS for willfully ignoring evidence that contradicts its position. *See RELX, Inc. v. Baran*, Case No. 19-cv-1993, 2019 WL 3557699 (EGS) (D.D.C. Aug. 5, 2019); *Genuine Parts Co. v. EPA*, 890 F.3d 304 (D.C. Cir. 2018); *Stellar IT Solutions, Inc. v. U.S. Citizenship and immigration Servs.*,

No. 18-2015 (RC), 2018 WL 6047413 (D.D.C. Nov. 19, 2018); *Next Gen. Tech., Inc. v. Johnson*,

328 F. Supp. 3d 252 (S.D.N.Y. 2017).

46.    USCIS mischaracterized evidence, the expert opinion letter in particular, even

citing irrelevant case law to make its claim that the expert's statements regarding human resources

industry standards were "unsupported." USCIS also imposed an impermissibly high burden on the

expert opinion letter, ignoring the expert's credentials and stating "[t]here is no evidence that the

professor knew any more about the specific duties of the position than what you provided." What

more an expert in the industry is expected to know about a position at a particular company than

the information that company has provided for the expert's review is unclear from USCIS's

decision. To expect that any expert providing an opinion must somehow have gained their own

independent knowledge of a business before creating an opinion is patently unreasonable and not

in accordance with the law.

47.    USCIS also mischaracterized the detailed job duties provided, claiming that they

were "generic in nature," and stating that this description of job duties was not accompanied by

additional evidence showing the unique or complex nature of the position. In doing so, USCIS

wholly ignored the substantial evidence Bridges MN provided demonstrating the complex nature

of its operations and Ms. Zhou's job duties, including detailed statements from the owner,

company profiles, charts demonstrating the direct relationship between the job duties and Ms.

Zhou's master's-level coursework, and multiple sample work products. Again, USCIS cannot base

its decision on a supposed lack of evidence when evidence was not actually lacking. *Stellar IT*

*Solutions, Inc. v. U.S. Citizenship and immigration Servs.*, No. 18-2015 (RC), 2018 WL 6047413

(D.D.C. Nov. 19, 2018).

48.    In willfully misinterpreting, mischaracterizing and ignoring the evidence before it,

USCIS sought to impose a higher evidentiary burden on Plaintiffs to prove that the position of Human Resources Analyst at Bridges MN qualifies as a specialty occupation. The standard of proof for H-1B petitions is preponderance of the evidence. If Plaintiffs have submitted relevant, probative, and credible evidence showing that it is "more likely than not" that the position qualifies as a specialty occupation, then Plaintiffs have met their burden. *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). USCIS failed to apply this standard in its review of Bridges MN's H-1B petition for Ms. Zhou, and abused its discretion.

## COUNT II

### Deprivation and Violation of Rights under the INA

49.     Plaintiffs reincorporate the above allegations as if set forth herein.

50.     In denying Bridges MN's petition for extension of an H-1B on behalf of Ms. Zhou, USCIS unlawfully interpreted and applied the criteria of "specialty occupation" under 8 U.S.C. § 1184(i)(1)(A)-(B) and 8 C.F.R. § 214.2(h)(4)(iii)(A). USCIS disregarded relevant evidence and imposed an impermissibly high burden of proof on Bridges MN. *Matter of Pazandeh*, 19 I&N Dec. 884 (BIA 1989).

51.     As a result, USCIS deprived Bridges MN of its rights under the INA to benefit from the statute's specialty occupation provisions, and thereby violated those rights. 8 U.S.C. § 1101(a)(15)(H).

## RELIEF REQUESTED

Plaintiffs hereby request the following relief:

52.     Hold unlawful and set aside USCIS's decision that Bridges MN failed to establish that Ms. Zhou has been and will be employed in a "specialty occupation;"

53.     Hold unlawful and set aside USCIS's decision denying Bridges MN's H-1B

petition as not in accordance and contrary to law;

54.     Reverse USCIS's decision as arbitrary, capricious, and contrary to evidence and grant Bridges MN's H-1B petition under 5 U.S.C. § 706(2);

55.     In the alternative, if the Court chooses not to reverse USCIS's decision on the H-1B petition, remand the decision for consideration of the H-1B petition as required by the APA;

56.     Grant costs and attorney fees to Plaintiffs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A); and

57.     Grant such further relief as the Court deems just and equitable.

Dated: September 26, 2019

_s/ Matthew Peed_
Matthew Peed, DC Bar No. 503328
**CLINTON & PEED**
777 Sixth St. NW, 11th Floor
Washington, DC 20001
Tel: (202) 621-1828
matt@clintonpeed.com

David W. Asp, MN Bar No. 344850
Jennifer L. M. Jacobs, MN Bar No. 328753
Kailey C. Mrosak, MN Bar No. 400190
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
dwasp@locklaw.com
jlmjacobs@locklaw.com
kcmrosak@locklaw.com

*Attorneys for Plaintiffs*